Elisha B. Morrell, Respondent, *v.* The Irving Fire
Insurance Company, Appellant.*

Where there is a provision in a contract of insurance that, instead of paying the
damages in money in case of loss, the insurers may elect to rebuild on giving
the notice stipulated in such contract, and a loss occurs, and the insurers elect
to rebuild, and give the stipulated notice to the insured, *Held,*

That the election to rebuild converted the contract of insurance into a building
contract.

That where the premises were insured in two separate companies for distinct
sums, and each contract of insurance contained the same stipulations on the
subject of electing to rebuild, etc., and both companies united in notifying
the insured of their election to rebuild after the loss, the insured might main-
tain his action against the said companies, jointly or severally, for a breach of
the contract to rebuild.

That where the insurers elected to rebuild, and partially performed their contract,
but desisted therefrom before fully completing it, the rule of damage in an
action brought by the insured for the non-performance of the building con-
tract would be the amount it would take to complete the building by making
it substantially like the one destroyed, independent of what had already been
expended thereon.

That after the parties had, by their election, converted the contract of insurance
into a building contract, the amount of the insurance named in the policy
ceased to be a rule of damages.

In such case, the action being brought against one of the companies, the plain-
tiff is entitled to recover the full amount of his damage against such company,
leaving it to seek contribution from the other company on its own motion.

New matter in defense of the action must be set up in the answer, to entitle the
defendant to avail himself of it on the trial.

This action was commenced November 4, 1857, upon a
policy of insurance, issued by the appellant, for the sum of
$3,000, upon a building situate in the city of Brooklyn, and
which was destroyed by fire January 6, 1857.

---

* This case of *Morrell* v. *The Irving Fire Insurance Company* was before
this court at the December term, 1863, at which term the principal questions
arising in the case were decided, reversing the decision of the court below, and
sending it back for a new trial. As the papers in the case, including the opin-
ions delivered therein by Marvin, J., and Denio, Ch. J., were destroyed by fire at
the time the house of the former Reporter was burned, I have procured copies,
and have published them at the end of this case.     Reporter.

At the time of the fire the respondent held a valid unexpired policy of insurance for $2,000 upon the same building, issued by the Excelsior Fire Insurance Company.

Each policy contained the usual clauses limiting the liability of the insurer to "such ratable proportion of the loss or damage happening to the subject insured, as the amount insured by this company shall bear to the whole amount insured thereon," and making it optional with the company "to rebuild, or to repair the building within a reasonable time, giving notice of their intention to do so, within twenty days after having received the preliminary proofs of loss, &c.

The two insurers gave a joint notice of their election to rebuild, and proceeded to erect upon the premises a new building, which they claim to have been substantially like the one destroyed.

The answer of the appellant alleges, as defense, the joint insurance, the election to rebuild, the erection of the building in pursuance of the notice, and acceptance of the building by the respondent.

A trial was had October 18, 1858, and a verdict was rendered against the appellant for the full amount of the policy and interest, upon which judgment was subsequently entered. That judgment was reversed by this court in December, 1863, and a new trial ordered, for reasons which appear in the opinions hereto annexed.

On or about the 25th day of September, 1857, the respondent commenced an action against the Excelsior Fire Insurance Company, upon its policy of insurance upon the same property. The defendant in that action answered, alleging substantially the same defense as that alleged by the appellant in this action.

That action was tried at the Kings County Circuit, May 25, 1858, and a verdict rendered in favor of respondent for $446.66, on which judgment was entered December 8, 1858. The judgment was paid July 26, 1859.

After the appeal in this cause had been decided in this court, and the *remittitur* sent down to the court below, the appellant made an offer of judgment.

The appellant then moved the court below, at Special Term, for leave to file a supplemental answer, alleging as matter of defense in this action, the recovery of a judgment by respondent against the Excelsior Fire Insurance Company subsequent to the joining of issue in this action, for the same cause of action, and the payment thereof.

The court refused to grant the leave asked, but made another and different order, with such limitations and conditions as rendered it entirely useless and unserviceable, as a means of relief, to the defendant.

From that order the defendant appealed to the General Term, where the order was affirmed.

The action was then tried a second time, at the Brooklyn Circuit, in October, 1864, and a verdict rendered in favor of the plaintiff for $3,469.93. Exceptions directed to be heard in the first instance at the General Term.

The decision of the General Term upon the exceptions was rendered March 7, 1865, by which a new trial was ordered, unless the plaintiff stipulated, within twenty days, to deduct two-fifths of the verdict.

The plaintiff thereupon stipulated to deduct two-fifths of the verdict, and entered judgment for the balance April 3, 1865.

From that judgment the defendant appeals to this court, and to sustain such appeal presents the following points:

*Edward Fitch*, for the appellant.

I. The decision of the Special Term, affirmed by the General Term, upon defendant's motion to be allowed to serve a supplemental answer, was erroneous.

Section 177 of amended Code provides that "the plaintiff and defendant, respectively, may be allowed, on motion, to make a supplemental complaint, answer or reply, alleging facts material to the case occurring after the former complaint, answer or reply, or of which the party was ignorant when his former pleading was made."

1. The facts which defendant asked leave to plead, arose after the joining of issue in this action.

2. They are " facts material to the case," and constitute legitimate matter of defense in this action.

*a.* The plaintiff claims and proceeds in this action for his whole damage. Any facts, therefore, tending to show that he had been paid the whole or any part of such damages by defendant, or a joint insurer, are material to the case, and constitute a good defense. (*Dexter* v. *Broat*, 16 Barb., 337 ; *Emery* v. *Fowler*, 39 Maine, 326.)

*b.* The plaintiff's whole damages had been ascertained and adjudged in the action against the Excelsior Insurance Company, upon a full showing of the precise state of facts alleged as the ground of recovery in this action.

*c.* When the case was previously before it, this court asserted the right of the plaintiff to proceed against both companies jointly, or either separately, for his whole damage, recovering, however, such damage but once. Under this ruling the action against the Excelsior, the verdict, judgment and payment thereof, are clearly material facts constituting a good defense to the plaintiff's action.

*d.* The rejected evidence was admissible under the most familiar principles of law and practice. It was a judgment of a court of concurrent jurisdiction directly upon the point of the extent of the plaintiff's damages, and binding him. (3 Abb. Dig., 185, and cases cited ; 1 Greenl. on Evidence, § 523.)

II. The court had no discretion to deny the motion. The relief asked by defendant was not a matter of favor, but of right. (*Drought* v. *Curtis*, 8 How., 56.)

1. It was simply the duty of the court to determine, judicially, from the facts shown by the motion papers, first, whether the facts proposed to be alleged in the supplemental answer arose after the joining of issue ; and, second, whether they were material and constituted matter of defense, either partial or complete ; and having judicially determined these questions in the affirmative, the court was bound to grant the motion, leaving the effect of the facts, when proved, to be determined on the trial. (*Radley* v. *Houghtaling*, 4 How., 251.)

2. Both of these questions the court determined in the affirmative. Indeed, there was and could be no controversy upon them. But the court claimed the right to exercise a discretion in denying or granting the motion according to its volition, prejudged the facts, and to avoid their presumed effect, when proved, refused to grant the motion. A judge, sitting at Special Term, cannot thus deprive a party of a substantial right.

3. It was not pretended that the motion was not made in time, or that the defendant was chargeable with any neglect, omission, or default, by which the right to the order asked was lost.

III. The order made by the Special Term, granted neither what defendant's motion asked, nor anything equivalent.

1. If the defendant had answered under the order of the court, the result would have been as follows:

| | | |
|---|---:|---:|
| Verdict, October 12, 1864, | | $3,469 93 |
| Verdict against Excelsior Insurance Co., May 25, 1858, | $446 66 | |
| Interest on same to Oct. 12, 1864, | 199 48 | |
| | | 646 14 |
| | | $2,823 79 |

Thus, the liability of the Excelsior Insurance Company for two-fifths of plaintiff's damages, would be $646.14, while the defendant's liability for three-fifths of the same damages would be $2,823.79, and the defendant would have been left without remedy. It could not have called upon the Excelsior for contribution.

It requires no argument to show the injustice and absurdity of an order which produced such results.

2. The terms of the order, as granted, were oppressive, requiring a payment of costs in a sum nearly equal to the amount allowed to be plead as paid. But these terms could have been borne, if the order had been granted in the manner and form that the defendant was entitled to as a matter of right.

IV. The court erred in refusing to permit the defendants to

read in evidence the policy made by the Excelsior Insurance Company.

1. The answer alleges this policy, and avers that it was valid, subsisting and unexpired at the time of the fire mentioned in the complaint.

2. This ninth condition of defendant's policy provided as follows: "In all cases of insurance, this company shall be liable only for such ratable proportion of the loss or damage happening to the 'subject' insured, as the amount insured by this company shall bear to the whole amount insured thereon."

3. The action is founded upon that policy. The condition is a part of the policy, and the extent of defendant's liability thereon is directly affected by the amount of other insurance.

The exclusion of this evidence was manifestly erroneous. In pursuance of this erroneous ruling, the court was compelled, for the sake of consistency, to refuse defendant's request to charge.

V. The court erred in refusing to dismiss the plaintiff's complaint upon defendant's motion, on the grounds stated.

1. When the two insurers became liable upon separate policies containing the same provision in relation to rebuilding, united in a joint notice of their election to rebuild, and entered upon the performance of the work, they became jointly liable to the insured as joint contractors for the completion of the building. Their separate interests became merged, as to the plaintiff, in one joint contract, and each became liable to him for the performance of every part of that which they undertook to do. Their former separate liabilities formed the consideration for their joint undertaking; but the thing which they became bound to do was a unit and indivisible, and their united agreement covered every part and particle of it alike. (See opinions of MARVIN and DENIO in this case, in Court of Appeals.)

2. The joint liability of the defendants and the Excelsior Insurance Company, as joint contractors, being established, the conclusion would seem to follow that this liability must be enforced by an action against both companies jointly upon

their joint contract. They are united in interest and should be joined as defendants. A complete determination or settlement of the questions involved cannot be had without thus joining them. (Code, §§ 118, 119.)

3. When this cause was before in this court, the court held that " the insured might have his action against both insurers jointly, or either separately, and recover his full damages for the breach of the building contract," and allowed this action to proceed against the appellant upon that theory. But the important fact did not then appear in the case, that another action had been brought against the Excelsior Insurance Company, wherein a recovery had been had, the amount of which had been paid, thereby depriving the defendants of all right to claim and all power to enforce contribution by that company.

It is respectfully submitted, that when this court held that the plaintiff " *could maintain* " a join action against both companies upon the agreement to rebuild, " and that *the action in this case should properly have been against both companies*," the court should have gone further and held that the plaintiff must proceed by a joint action against both companies upon such joint liability.

VI. The Special Term having denied defendant's motion for leave to serve a supplemental answer, the cause was tried upon the original pleadings; and upon the trial the court rejected as evidence the record of judgment in the action against the Excelsior Insurance Company, and the certificate of satisfaction thereof.

The effect of the several rulings of the court, and of the order of the Special Term, as demonstrated by actual results, was:

1. To render nugatory and of no effect the ninth condition of defendant's policy, holding defendant as sole insurer for the whole loss, instead of three-fifths of such loss, as provided by the policy.

2. To make defendant alone liable to plaintiff, upon a contract to rebuild, which was joint in every particular, and so declared by this court.

3. To permit a recovery upon that joint contract against the defendant for the entire amount of plaintiff's damages, when by the action of the plaintiff all right to claim contribution by the co-contractor had been lost to the defendant.

4. To permit two assessments of plaintiff's damages by different juries upon a contract joint and indivisible in its character; one made May 25, 1858, by which the whole amount of such damages is fixed at $1,116.65; and two-fifths thereof, viz., $446.66, is levied upon the Excelsior Insurance Company, and the other made October 12, 1864, whereby the amount is fixed as $3,469.93, and the whole levied upon the defendant.

5. To allow the plaintiff to recover his damages twice. He collected two-fifths of his damages of the Excelsior company on a fair assessment thereof, and on the trial of this action is permitted to take a verdict for the whole amount, assessed at more than double the former assessment.

Such rulings and results cannot be sustained upon any principle of law or equity. They are in plain violation of justice and common sense.

VII. The decision of the General Term, followed by the palintiff's stipulation to deduct two-fifths from the amount of the verdict, does not cure the previous errors committed, nor afford the defendant adequate relief therefrom.

1. The liability of the Excelsior Insurance Company for its proportion of plaintiff's loss, being two-fifths thereof, had been judicially ascertained, fixed and paid at $446.66, which, with interest to October 12th, 1864, the date of the verdict in this action, is equal to $646.14, and by this decision and stipulation judgment stands against the defendant upon its liability for three-fifths at the same date for $2,081.96.

By what rule can this result be justified or sustained?

2. The defendant had a right to prove, and should have been permitted to prove the verdict and judgment against the Excelsior Insurance Company, using these items of testimony upon the trial for what they were worth, either in bar of the action, or to fix the amount of plaintiff's damages.

The judgment should be reversed, and a new trial ordered.

*John H. Reynolds*, for the respondent.

DAVIES, J.   This action was brought to recover the amount of a policy issued by defendants upon certain premises of the plaintiff, whereby the defendants insured him against loss or damage by fire to the extent of $3,000.   The building insured was destroyed by fire in January, 1857.

At the time of the fire, the plaintiff had another policy of insurance for $2,000 upon the same building, issued by the Excelsior Fire Insurance Company.

Each policy contained the usual clauses limiting the liability of the insurer "to such ratable proportion of the loss or damage happening to the subject insured as the amount insured by this company shall bear to the whole amount insured thereon," and making it optional with the company to rebuild or to repair the building within a reasonable time, giving notice of their intention · to do so within twenty days after having received the preliminary proofs of loss, &c."   The two companies, on the happening of the loss, united in a notice to the plaintiff, stating "that we are prepared to rebuild the said building, and you are requested to furnish us with the plans and specifications of the same."

In pursuance of this notice, the companies proceeded to erect and repair the building, in accordance with the plans and specifications furnished, and claimed to have completed the same in conformity therewith.   The plaintiff insisted that the building was not thus completed, and on the 4th day of November, 1857, he commenced this action upon the said policy of insurance, and claimed to recover the full amount thereof.   On the trial the plaintiff had a verdict for the full amount of the policy and the interest thereon, and judgment thereon was affirmed at the General Term of the Supreme Court.   On appeal to this court, the judgment was reversed and a new trial ordered.   This court held, that the election to rebuild formed a new contract or agreement to build, according to the plans, and that such contract could be enforced as a building contract, without reference to the amount named in the policy, and that, if the insurer has not

replaced the article or rebuilt the building in the manner agreed upon, the insured will be entitled to recover the damages which he has sustained by a breach of the contract or agreement, as in other cases of the breach by the builder of his agreement to build; that the action on this agreement to rebuild could properly have been against both companies; that, where they jointly elected to rebuild, they jointly agreed to rebuild, and were jointly liable in an action for a breach of the agreement. This court also held, that the plaintiff might, at his election, treat the contract to rebuild as that of each insurer, and, for a breach of the building agreement, maintain his action against either company, and recover full damages; that if the party undertaking to rebuild should fail to perform the contract, and the insured should recover and collect damages for the breach of the agreement, such party could recover of the other insurer a ratable proportion of the loss. Such insurer would, by the payment of the damages received by the insured, have satisfied the demand for the loss; the insured would have been fully indemnified; and the insurer, who paid nothing and did nothing, would be liable for contribution.

Upon the second trial, the counsel for the defendants moved to nonsuit the plaintiff, on the following grounds: 1. That the notice of election to rebuild and the testimony showed that the defendants and the Excelsior Company jointly elected to rebuild, and thereby jointly contracted to rebuild, and that the plaintiff's remedy for non-performance of that contract is by action against the defendants and the Excelsior Fire Insurance Company jointly. 2. That the contract to indemnify the plaintiff by payment of money was superseded by the joint contract of the two companies to rebuild, and the action should have been against both companies upon the joint contract. 3. That the two companies are united in interest in the damages claimed by the plaintiff in this action, and they must be joined as defendants. The court denied the motion. All these propositions embrace substantially but one idea, namely, that the action, being in the judgment of this court upon the agreement to rebuild, was necessarily a joint action

against both companies, and could not be maintained against either separately. The court properly refused to nonsuit, as this court had distinctly held that the action could be maintained against either, and that the whole damage sustained by the plaintiff, on occasion of the breach of the contract, might be recovered against either party, and that the company against which the recovery was had might compel contribution from the other. The whole damage which the plaintiff had sustained by reason of the breach of the building contract or agreement might be recovered from either of the parties agreeing to rebuild, though it should exceed the amount named in the policy. The court thought the action might be maintained against the two companies, either jointly or separately; that, as between themselves, they were to contribute to the whole loss, in proportion to the amount insured by each.

This view of the law, as applicable to the case, disposes of the exception taken by the defendants to the refusal of the court to permit the defendants to read in evidence the policy of insurance made by the Excelsior Company, for $2,000, upon the same premises. It was wholly immaterial, in the action against these defendants upon their contract to rebuild. It could have had no other legitimate effect than to show that these defendants would have had a claim upon that company for contribution to the extent of two-fifths of the damages sustained by the plaintiff. It was, therefore, rightfully excluded.

In his charge to the jury, the learned judge who tried the action correctly stated the rule as established by this court to be, that the jury were to ascertain the difference in value between the building as it existed on the day it was destroyed by fire and the building which the insurance company furnished and delivered over to the plaintiff after this notice, and that such amount would be the damages which the plaintiff is entitled to recover. And the court further charged, that the plaintiff is entitled to interest from the time possession of the new building was delivered over to him. No exception was taken to this charge, or to any part thereof.

The counsel for the defendants requested the court to charge the jury that the Excelsior Fire Insurance Company, at the time of the fire, had a policy of insurance upon the building destroyed for $2,000, and the defendants a policy for $3,000, and by the fifth subdivision annexed to defendants' policy the defendants can be made liable only for three-fifths of the amount of plaintiff's damages. The court declined so to charge, and the defendants' counsel excepted.

The counsel for defendants also requested the judge to charge that it was the duty of the jury to ascertain the whole amount of the plaintiff's damages, and after having done so, to render a verdict for three-fifths of that amount. The court declined so to charge, and the defendants' counsel excepted.

For the reasons already suggested, these requests to charge were properly refused. The defendants were liable on their contract to rebuild for the whole amount of damage sustained by the plaintiff by reason of the non-performance of their contract. They were entitled to no deduction from that sum, because another party was also liable to pay a portion of it. That other party was liable to contribute its share or portion, as this court held on the former argument, and it also held that these defendants were primarily liable to pay the whole amount of damage. The proof offered of the policy of the Excelsior Fire Insurance Company having been excluded, and properly so, there was no foundation for these requests to charge. The jury, under the charge of the court, found the whole amount of the damage sustained by the plaintiff, by reason of the breach of the agreement to rebuild, at the sum of $2,300 and the interest thereon, for which sum judgment was perfected.

Previous to the last trial of this action, the defendants applied to the Special Term of the Supreme Court for leave to file an amended or supplemental answer, setting up as matter of defense in this action the recovery of a judgment by the plaintiff against the Excelsior Fire Insurance Company subsequent to the joining of the issue in this action for the same cause of action as is alleged in this action, the amount and date of said judgment, and the payment thereof. That

motion was founded on an affidavit of the defendants' attorney, which stated that on or about the 25th day of September, 1857, the above named plaintiff commenced an action against the Excelsior Fire Insurance Company upon the policy of insurance mentioned and described in the defendants' answer in this action, to recover for the loss alleged and stated in the complaint in the action; that said Excelsior Fire Insurance Company defended said action, alleging substantially the same defense as that alleged in this action; the answer of said Excelsior Fire Insurance Company containing the following allegation: "And these defendants, further answering, state, that within a reasonable time after the said alleged loss or damage, they did, pursuant to a condition annexed to and made part of said policy, cause to be rebuilt the building lost or damaged, and that the building so rebuilt was of a kind or quality like that alleged to have been burned, and was erected upon the premises mentioned in the complaint, and that said plaintiff, upon the completion thereof, accepted the same, and entered into and took possession thereof, and has ever since continued to occupy and use the same; that the issues in said action came on to be tried, and a verdict therein was rendered in favor of the plaintiff for $446.66, upon which judgment was rendered against the said Excelsior Fire Insurance Company, December 8, 1858; that the plaintiff thereupon appealed from said judgment to the General Term; and that said Excelsior Fire Insurance Company has since paid and satisfied the same, and that said judgment was thereupon canceled and discharged of record."

The motion was granted at the Special Term to the extent only of permitting the defendants to set up in such supplemental answer, as matter of defense to this action, to the extent of the money paid, the fact of payment of the amount of damages included in the judgment in favor of the plaintiff against the Excelsior Insurance Company, on account of the plaintiff's damages in this action. Such terms were imposed by the order that the defendants did not avail themselves of the permission to put in the supplemental answer

for the restricted purpose allowed by the order, and appealed thereupon to the General Term, which affirmed the order.

It is now claimed that this order is reviewable in this court on the appeal from the judgment. It is apparent, from the opinion of the justice at Special Term, that it was contended before him that the judgment against the Excelsior Company extinguished the claim of the plaintiff on the contract to rebuild. He thought it inequitable, as a defense beyond the amount paid under it, except as a payment on account of the plaintiff's damages. He said the recovery in that suit was only for a *pro rata* amount of these damages, and if his loss and damages in the present action are proved to be greater than the amount so paid, the plaintiff should not be barred by that judgment from the recovery of the excess in this suit; that it was equitable and right that the defendants should be allowed to show what the plaintiff had recovered from the other company towards the satisfaction of his damages, and be held liable for the balance only; but that, on the other hand, it would be inequitable to deprive the plaintiff from recovering his full damages on the technical rule, if such a rule should be held to apply to this case, that the judgment against the Excelsior Company and the payment of it operates as an extinguishment of the plaintiff's entire claim. The motion was therefore granted so far only as to allow the sum paid to be applied in reduction of the plaintiff's claim, and not in bar or extinguishment thereof. The General Term of the Supreme Court affirmed the order, holding that the defendants could not set up the new matter in extinguishment of the entire claim of the plaintiff; that it was not just it should be done, as the judgment was but for two-fifths of the damages according to the claim of the Excelsior Company on the trial. It is manifest, therefore, that both the General and Special Terms placed their refusal to the application to file a supplemental answer on the ground that the defendants then claimed that the recovery against the Excelsior Company was an entire bar and extinguishment of the plaintiff's claim. It is also apparent that if the application had been placed upon the true ground, namely, that the recovery of the judgment

and payment thereof extinguished and barred two-fifths of the plaintiff's claim, it would have been granted, as it is clear it should have been. Such application would then have been to set up matter accruing subsequent to the putting in of the original answer, and which was material and necessary to the defendants' defense in part, and would have undoubtedly been granted.

Upon the last trial of this action, the counsel for the defendants produced and offered to read in evidence the judgment roll in the action against the Excelsior Company, which was objected to by the plaintiff's counsel and the objection sustained, and the same was excluded, to which the defendants excepted. The counsel for the defendants also offered to prove that the judgment against the Excelsior Company was for a loss on the same premises, sustained in consequence of the same fire as the claim in this action, and that the amount thereof had been paid.

As the recovery in the action against the Excelsior Company was limited, as appears by the record, to two-fifths of the plaintiff's claim, these offers must be regarded as an effort to show either a total or partial extinguishment and payment of the plaintiff's claim. In either aspect, the facts offered were inadmissible, without being pleaded. This precise point arose and was decided in the case of *McKyring* v. *Bull* (16 N. Y., 297). The conclusion of the court in that case was, that the provisions of the Code required the defendants in all cases to plead any new matter constituting either an entire or partial defense, and to prohibit them from giving such matter in evidence upon the assessment of damages when not set up in the answer. The judge at the circuit, therefore, rightfully excluded the evidence offered.

The remaining question to be considered is, whether the order of the General Term, affirming that of the Special Term, refusing leave to the defendants to put in a supplemental answer, is reviewable in this court. It is claimed that it is, under the last clause of subdivision first of section eleven of the Code, which declares that upon the appeal from the

judgment in the action, the court shall have power to review any intermediate order involving the merits and necessarily affecting the judgment. If the order were reviewable in this court, I should not concur with the Supreme Court in its refusal to permit the defendants to file a supplemental answer, setting up what clearly they had a right to do, namely, the extinguishment and payment of two-fifths of the plaintiff's claim. If the defendants had based their application on this ground, I think it should have been granted. But the discussion of this question is now of no practical moment, as the General Term of the Supreme Court have given to the defendants all the benefit they could legally have derived if they had filed their supplemental answer, and had given the evidence offered by them, by confining the recovery of the plaintiff in this action to the remaining three-fifths of his claim. In relation to this, there is no pretense that it has ever been paid or extinguished, except by the ground assumed, that the recovery of the judgment by this plaintiff against the Excelsior Company extinguished also his claim against these defendants for the remaining three-fifths. That proposition cannot be maintained; and the results, which will be attained, are such as equitably attached to each of these companies. These present defendants were liable to pay and contribute three-fifths of the damage which the plaintiff sustained by the non-performance of their contract to rebuild. In the present action the jury, under an unexceptionable charge, have found such damage to be the sum of $2,300. We must assume this to be its extent; and the defendants being clearly bound to pay and contribute that sum, they have no just cause of complaint with the judgment appealed from, as modified and finally adjusted by the General Term of the Supreme Court. Their legal liability is not affected by the circumstance that the other company has extinguished its liability to pay two-fifths of the damage by the payment to this plaintiff of a less sum than its proper proportion. These defendants are not called upon to pay more than their proper portion of the damage as ascertained by the jury; and if they have any

remedy, it is by a call on the Excelsior Company for contribution.

The judgment appealed from should be affirmed, with costs.

CAMPBELL, J.   When this case was before this court on a former occasion, it was held that the election to rebuild converted the contract of insurance into a building contract; and the Excelsior Insurance Company having also a policy of insurance on the building destroyed, and having united with the defendant in such election to rebuild, both companies were liable in a joint action for a breach of their agreement. The opinion was also expressed that the plaintiff might treat the election to rebuild as the election of each insurer, and for a breach of the building contract maintain an action against either company, collecting damages, however, but once. When this decision was rendered, an action was pending in favor of this plaintiff against the Excelsior Insurance Company to recover damages for a breach of the same contract on the part of that company.   That action was first tried, and a verdict was rendered in favor of the plaintiff for $446.66, being two-fifths of the damages of plaintiff, according to the views of the jury in that case; such two-fifths being the proportion which the amount covered by the policy of the Excelsior Company bore to the whole insurance.   The judgment entered was paid by the Excelsior Company; and the question most material which now arises is, ought the Supreme Court to have granted leave to this defendant to put in a supplemental answer setting up such judgment recovered against the Excelsior Company, and the payment of such judgment by that company.   Leave to put in such answer was refused, except so far as this, allowing this defendant to plead and show payment of the $446.66 in part satisfaction of the damages.   The defendant put in no further answer, and went down to trial under the original pleadings, and on such trial all evidence in relation to the recovery of the judgment and its payment by the Excelsior Company was excluded.   In this latter trial the jury rendered a verdict against the defendant for $3,469.93, assessing at that amount

the entire damages sustained by the plaintiff, and which, it will be seen, was about three times the amount of damages as found by the jury in the case of the Excelsior Company.

The defendant may be allowed, on motion, to make a supplemental answer. (Code, § 177.) If leave is given on motion, it can hardly be said that the defendant is entitled to such leave as a matter of strict right. Such applications should be granted, however, unless they have been too long delayed, are clearly frivolous, or the defense presented is so inequitable in its nature that the permission sought should be refused for that cause. (6 Duer, 661.) In this case there were, I think, no laches, nor was the defense proposed a frivolous one. On the contrary, if successfully pleaded and established by proof, it would probably have constituted a complete bar at law to any further recovery against this defendant. The application as made, however, was properly denied, because it would have been, I think, clearly inequitable to have granted it. In the assessment of damages in the case of the Excelsior Company, the jury were instructed, on the request of the defendant, to render their verdict for only two-fifths of the damages which the plaintiff had sustained by reason of the breach of the building contract by the insurance companies. If the effect of the supplemental answer might have been to prevent the plaintiff recovering any other or further damages from this defendant, then it would have been inequitable to have granted the application, and it was properly denied. What the defendant should have done, it seems to me, was, to make the application for leave to put in a supplemental answer setting up the fact of the recovery and payment of the Excelsior judgment, and at the same time tendering a stipulation to be bound by the assessment of damages in that case and allowing judgment as against the defendant for three-fifths thereof. Such an application ought to have been, and probably would have been, granted, as it manifestly would have been, I think, equitable and right. But no such application was made. The defendant insisted upon strict legal rights, and has failed. Looking at the magnitude of the verdict, as compared with that on the other trial, and substantially on the same evidence,

it is very possible that injustice has been done to this defendant. But as the case is presented to us, I do not see how we can relieve the defendant. The judgment must be affirmed.

All the judges concurring.

Judgment affirmed.

[OPINIONS delivered at the December Term, 1863, when this case was before this court the first time.]      REPORTER.

MARVIN, J.   This is a new case, to which we are to apply, after ascertaining the contract between the parties, principles of law well settled.

It is well settled law in this State that he who undertakes to build a house for another, or to perform any work, to be paid for when the house is completed, or the other work done, cannot recover any portion of the stipulated price or value of the work until he has substantially performed the contract on his part. (*Smith* v. *Brady*, 17 N. Y., 873, and cases therein cited.) It is also well settled law that when one contracts with another to build for him a house, or do other work, and agrees to pay portions of the consideration in installments as the work progresses, and does so pay, or pays the whole consideration in advance of the performance of the work, he can maintain no action for money had and received, though the contract has been broken and remains unperformed, unless the contract has been wholly rescinded. His action must be upon the contract, and his damages must be for the breach or breaches of the contract. The amount of damages will not depend upon the amount of money he had paid, but the damages will be the amount of loss sustained by a failure to perform the contract. In other words, what it will cost to procure a full completion of the contract, including, if the case calls for it, any special loss by reason of delays, &c. In the present case, the first of the above principles has been applied, and the defendant has been placed in the position of one who has contracted to construct a building in a certain manner, and for which he is to be paid after the work is done, and who claims that he has per-

formed the contract, and seeks, by action, to recover the consideration, and is met with the issue that he had not performed the condition precedent upon the performance of which his right of action depends. This issue being decided against the defendant, it is held that he is to have nothing on account of the house actually built, but is to pay to the plaintiff the entire sum specified in the policy as indemnity to the plaintiff for the loss of his building.

I am not satisfied that this rule should be applied to the case.

It is important to determine, with some precision, what the case is — what the contract was between the parties. It is said that the contract was on the part of the defendant, that in consideration of a sum presently paid, it would indemnify (the contract is insure) the plaintiff to the amount of $3,000 for any loss he should sustain by fire on a certain building; and the defendant promised and agreed to make good to the plaintiff, &c., all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property specified. But this was not the entire contract. One of its terms and conditions was that in case of any loss or damage to the property insured, it should be optional with the company to rebuild or repair the building within a reasonable time, giving notice to do so within twenty days after receiving the preliminary proofs of loss. What construction should be given to this provision? What relation was established by it between the parties? The agreement is not exactly that the defendant shall do one of two things, one of which being performed satisfied the contract. There is no absolute contract that the defendant, upon the happening of a certain event, should pay a sum of money *or* rebuild the house. But the agreement was that the defendant should pay an amount of money equal to the loss, not exceeding $3,000. Call it an indemnity for the loss, and the question will not be changed, for the company might, within twenty days after proof of the loss, elect or decide to rebuild the building, and give notice of such election or decision. In other words, the defendant had the

right by the contract to elect to rebuild, and in that way indemnify the plaintiff by rebuilding. When the election to rebuild was made and notified to the plaintiff, what was the relation between the parties? The building had been destroyed by fire. The amount of the loss may or it may not have been known. There may have been dispute between the parties touching the amount of the loss. The insured could only claim $3,000, though the loss may have been greater. He could only recover his actual loss as an indemnity, but the actual amount of the loss may have been, and often is, a matter of dispute and difficulty, requiring a lawsuit to settle it. The insured may claim a much greater sum than the insurer is willing to pay, and for the purpose of avoiding the difficulties and litigation likely to arise from such disputes, the insurer secures, by the contract, a right to indemnify the insured by rebuilding the destroyed building instead of paying money, the amount of which is uncertain, and the insured agrees to accept indemnity in this way in lieu of any amount of money. All necessity for ascertaining the amount of the loss ceases when the insurer undertakes the restoration of the property. It seems to me that when the insurer elects to rebuild, and gives notice of such election, the contract at once is that the insurer will rebuild absolutely in consideration of the premises, and the defendant's agreement is that the insurer may do so, in satisfaction of the demand, uncertain in amount, which he claims of the insurer. This becomes the absolute agreement between the parties, by virtue of the agreement originally made, and which, prior to the election, was subject to certain contingencies, terms and conditions; and it seems to me that after such election and notice, the relation between the parties is simply that of a contractor to build, who had received the entire consideration in advance, and a party for whom the building is to be erected and who has made full payment, therefor, in advance of the work. Such, I think, is the fair construction of the contract. This provision was intended to obviate difficulties, some of which have been suggested. In this view no action could be maintained for the purpose

of recovering the $3,000, or such portion of it as should be equivalent to the loss. There can be no inquiry as to the amount of the loss. The action will be upon the contract to rebuild, and the amount of the damages to be recovered upon a breach of the contract will be determined as in other actions for the breach of building contracts, and such amount may exceed the $3,000. The defendant agreed that it would build the house, and it has been paid for its agreement and must perform the agreement or pay the damages.

The peculiar language used in this provision has not escaped attention. "It shall be optional with the insurance company to replace and to rebuild," the insurance company "giving notice of their intention to do so." It may be said that the language is not sufficient to make a present contract to rebuild after the election and notice. That although the defendant had the optional right to rebuild, and elected to rebuild, and gave notice of intention to do so, still it was not bound to go on and build, but it might stop and leave the insured to his remedy for a moneyed indemnity. This is not, in my opinion, the fair construction of the provision, nor was such the intention of the parties to the contract. The option was with the defendant, and it was to give notice of its election. The language as to the notice may not have been very happily chosen in using the word "intention" instead of the words *election, option,* or *choice;* but there can be no difficulty about the meaning. The right to rebuild, and the obligation to rebuild, depended upon an election to rebuild, and the notice was simply to inform the other party that such election had been made. The parties so understood the language. The notice actually given in this case said nothing about intention. Its language is: "We hereby give you notice that we are prepared to rebuild said building," and this was treated as sufficient, and both parties acted upon it. It seems to me very clear that, after the election and notice, there existed a contract between the parties for rebuilding of the building destroyed, and the contract to make good in money the loss no longer existed between the parties. If I am right in the view taken of the

contract, the position that the contract for indemnity in money remained in force until the house was actually rebuilt, must fail.    This position would seem to regard the provision as an *accord* not valid as a *satisfaction* until executed, whereas, I regard it as a part of the *original agreement* by which this provision might, upon the happening of a certain contingency, be substituted by the election of one of the parties for and in the place of the provision to indemnify in money, and it is the agreement of both parties, and both are bound by it.    It is, I submit, an error to suppose that this was a conditional agreement by which, when performed, the previous agreement to pay in money was satisfied, and if not performed, then such money agreement remained in force. I have read carefully the dissenting opinion of Justice EMOTT in the court below; and though I am not able to concur fully in his construction of the contract, I have no difficulty in adopting his argument against the rule of damages enunciated at the circuit.

Assuming that the agreement to indemnify in money was not entirely superseded by the agreement to rebuild, what would the rights of the parties be upon a failure or partial failure to rebuild?    The defendant had the right to satisfy the claim for the loss by rebuilding.    Suppose the loss to have been $3,000, and the insurer expends $2,000 judiciously and profitably towards the rebuilding of the house, and then stops, and the insured takes up the work and completes the house by expending $1,000.    Has not this claim for damages been partially satisfied?    I certainly think so; and this is the position of Justice EMOTT.    He applies to the case the same principles applicable to an action against a contractor for a breach of the contract to build, and refuses to apply the strict rule against a contractor who seeks to recover the price, and is met with the objection that the work has not been completed according to the contract.    But the learned justice limits the recovery to a sum not exceeding the amount that would have produced indemnity had the agreement to rebuild never existed, and in this we differ.    It seems to me that this rule will be very difficult in practice.

The indemnity in money can never exceed the amount of the risk specified in the policy. Suppose the risk taken to be $3,000, and the insurer elects to rebuild, and actually expends, necessarily and properly, $3,000, and the building is not completed, may he stop and leave the building to be completed by the insured at, say the cost of an additional $1,000? This must be so if the insured in such case is only entitled to an indemnity measured by the sum of money specified in the policy; for the $3,000, having been judiciously expended, is worth so much to him. The learned justice, however, lays down the rule that the plaintiff is entitled to recover such an amount, not exceeding the amount of the insurance, as will be necessary to make the building erected equal in all respects, and similar to the one burned. The result of this rule would be, in the case above supposed, that the plaintiff could recover the additional $1,000 expended by him though the defendant had expended already the full amount insured, and this is precisely what I claim. But suppose the insurer expends $1,000, and it costs $3,000 to complete the building, the insured, by the rule laid down, will recover $3,000. Will he not in such a case realize for indemnity $4,000? Certainly he will. Or suppose the insurer expends $2,000, and the insured $3,000, to complete the building, the latter will recover the $3,000 and thus realize $5,000. He is to recover such an amount as will be necessary to complete the building, not, however, exceeding the amount of the insurance. Under such a rule an insurer who has elected to rebuild, and has performed part of the work and discovers that he has a hard bargain and cannot complete the work for the amount of the insurance, will at once abandon the work or he may do so, being liable only for the payment of the amount insured. Under such a rule, the amount of the loss will always come up for litigation and adjustment, and, as I understand, the principal object of the provision we are considering, is to permit the insurer to obviate all disputes and litigation touching the amount of the loss by replacing the articles lost or damaged, or by repairing or rebuilding the building destroyed. By adopting

the construction for which I contend, we have a simple rule which excludes any inquiry as to the amount of the loss, and the inquiry will be, has the insured replaced the article or rebuilt the building in the manner agreed, and if not, the damages will be as in other cases of the breach, by the builder, of his agreement to build.

It is supposed that, in a case like the present, difficulties exist touching the parties in the action. I think that the supposed difficulties will disappear upon a brief examination of the law applicable to such cases. The plaintiff held two policies upon the same building, one issued by the defendant, taking a risk of $3,000, the other issued by the Excelsior Fire Insurance Company, taking a risk of $2,000. Each policy contained the same provisions or condition touching the optional right to rebuild. In this case both the companies elected to rebuild, and they united in one notice that they were prepared to rebuild. The case does not contain, as it should, the policies. But they were, of course, both *valid,* and, in contemplation of law, constituted one policy, so far as the amount of loss was concerned. That is to say, the insured could not recover the amount of his loss of each insurer, supposing it had been less than the smallest risk. All he is entitled to from all the insurers is one indemnity. If he recovers this of one of the insurers, such insurer may recover of the other, by way of contribution, his proper proportion. It is very common in this country to provide in fire policies, that in case of two or more insurances upon the same property, each insurer shall be liable only for a ratable proportion of the loss. (See Par. Mer. L., 516, 517.)

Whether it was provided in the present case that each company should only be liable for its ratable proportion of the loss does not appear, but I think this will be seen not to be material. Though the plaintiff could not have maintained a joint action against the companies upon these policies if there had been no election to rebuild, but could have maintained separate actions, recovering from the defendant three-fifths of the loss, not exceeding $3,000, and from the other company two-fifths, not exceeding $2,000, it does not

follow that, upon an election by both companies to rebuild, he could not maintain a joint action against both upon the agreement to rebuild. I think he could maintain such action, and that the action in this case should properly have been against both companies. When they jointly elected to rebuild, they jointly agreed to rebuild, and were jointly liable in an action for a breach of their agreement. I have no doubt the action would have been well brought against both companies. They would not be permitted to allege that they had not jointly contracted with the plaintiff. I am not prepared to say that the action was not well brought against the defendant alone. I think the plaintiff might well treat the election to rebuild as the election of each insurer, and for a breach of the building agreement maintain his action against either company, and recover full damages, or perhaps a separate action against each for full damages, collecting the damages, however, but once. I think these positions follow from the legal relations and rights of all the parties. The two companies were bound to pay the loss ratably if so stipulated in the policies, and if not so stipulated, the whole loss should be paid by one, then the other would be liable for contribution. When one of the companies should elect to rebuild, it would come under obligation to the insured to make full indemnity by rebuilding, and if there were a provision in the policy that it should only be liable to pay a ratable proportion of the loss, such provision would be superseded by the agreement to rebuild. If only one of the insurers should elect to rebuild and should perform the building contract, it would be entitled to contribution from the other company, not a proportion of the amount expended in building, but a ratable proportion in money of the actual loss. So, also, if the party undertaking to rebuild should fail to perform the contract, and the insured should recover and collect damages for the breach of the agreement, such party could recover of the other insurer a ratable proportion of the loss. Such insurer would, by the payment of the damages recovered by the insured, have satisfied the demand for the loss. The insured would be fully indemnified, and

the insurer who paid nothing and did nothing would be liable for contribution. In my opinion, the insured, in a case like the present, may have his action against both insurers jointly, or against either separately, and recover his full damages for the breach of the building contract, and leave the two insurers to an adjustment of their rights between themselves according to well settled rules of law applicable to different insurers of the same property. The judgment should be reversed, and there should be a new trial.

DAVIES, WRIGHT, ROSEKRANS, and BALCOM, JJ., concurred; SELDEN and EMOTT, JJ., dissented.

DENIO, Ch. J. I am of opinion that the rule of damages laid down by the judge at the circuit was erroneous. By the terms of the policy, the defendants contracted in effect that in case the insured premises should be destroyed by fire, they would make good the loss to the extent of three thousand dollars, or rebuild the edifice destroyed, at their option. But if they should elect to rebuild, instead of furnishing the indemnity by the payment of money, they were to give notice of their intention to do so within twenty days after receiving the preliminary proof of loss; and the work of rebuilding was to be performed within a reasonable time. The defendants gave the notice required, and proceeded to and did erect another building, conforming in a general way to the building which had been burned, but not substantially like that one, or equal in value to it.

I am of opinion that when the defendants had elected to provide the stipulated indemnity, by way of rebuilding, instead of the payment of money, and had entered upon the premises of the insured party, had taken possession of the materials which had been saved, and had commenced the erection of a building upon the site of the former one, that the contract then became one for rebuilding, and that the alternative which looked to the payment of money became obsolete and inapplicable, and that the case then became the same which it would have been if the contract had obliged the defendant simply to rebuild in case of a loss. The insurers,

having a proper regard to their own interest, should not, under such a policy as this, elect to rebuild, unless the case is such that they can, with the same or a less amount of money than the sum insured, procure as good an edifice to be erected as the one which had been destroyed; but if they will, by availing themselves of the option, undertake to rebuild, they are bound to do so, at any expense which may be necessary, though it should exceed the amount insured. That amount has no longer any connection with the case, and cannot be made use of to test the quality or completeness of the new building, or to regulate the recovery in case of a failure to perform. Hence, where the amount of the pecuniary indemnity named in the policy is less than the value of the building insured and burned, it is just as unwise in the insurers to embrace the option to rebuild, as it would be to agree in the first instance for the same premium absolutely to rebuild. By electing to rebuild under a policy in the alternative, a new contract, in a certain sense, is made. What was before alternative and optional becomes fixed and certain. An agreement to make good the loss in money, not exceeding the amount insured, is changed into a positive contract to erect another similar building. I do not mean one precisely identical, but one substantially like it, and so far identical as one can practically be made. Upon the question of correspondence between the old and the new building, as well as in regard to the following of the plans furnished by and the directions given by the assured, I adopt the instructions of the judge who presided at the trial, as a careful and discriminating view of the case.

It follows from the foregoing views that the amount of money which was in a certain event to have been paid, was not, as was thought by the judge who dissented, a proper limitation of the amount of the recovery, and that the loss sustained by its destruction was not a precisely accurate measure of damages in case of the failure to rebuild. The latter would approximate to the true rule, though the more accurate one would be what it would cost to rebuild the edifice.

Although the contract had become one which obliged the defendants simply to rebuild, it was not like an ordinary building contract, where the compensation, or any part of it, is to be paid upon the completion of the work.  In such cases a full performance, in substantial conformity with the terms of the agreement, is a condition precedent to a recovery on the contract; and it has been held, by a series of decisions in this State, culminating in *Smith* v. *Brady* (17 N. Y., 173), that where there has been a failure thus to perform, the builder cannot recover for what he has done, upon the footing of a *quantum meruit*.  But this was not the case of a payment agreed to be made upon the performance of a condition. The consideration of the defendant's obligation has been paid by the plaintiff in advance.  The contract was completely executed on his part, and the cases in which a recovery is defeated by the non-performance of a condition precedent have no direct application.  The question is, whether a party who has contracted to erect a building on the land of another, and has been paid the consideration in advance, and has put up a building in professed compliance with the contract, and corresponding in its principal features with its provisions, though not literally or substantially a full compliance with its requirements, is obliged to pay the same amount of damages as though he had done nothing towards performance. I lay out of view cases of a fraudulent, or merely colorable pretense of performance, for there is no reason to question the good faith of the defendants, nor that the want of full performance was the fault of their contractor, or his mechanics, or the result of ignorance or misapprehension on their part; and I am of opinion that, in a case free from such embarrassments, the same damages should not be recovered as in one where there has been a total failure to perform.  The class of cases referred to in the opinion of the court, in *Smith* v. *Brady*, depend upon the principle that where payment, by the terms of the contract, is to be made only upon the performance of a condition precedent, there can be no recovery except such condition be performed, and upon the further principle that where there is an express contract, an

implied one cannot be established.   These rules are technical ones, and should not be applied by any supposed analogy where the reasons upon which they were established do not exist.   In *Champlin* v. *Rowley* (18 Wend., 187), where the plaintiff had agreed to deliver a specified quantity of hay at a given price, and only delivered part, and brought an action for the value· of that part, it was held that he could not recover, the delivery of the whole being considered a condition precedent to the payment.   Chancellor WALWORTH, who delivered the only opinion in the case, placed the judgment upon these grounds, and upon a uniform course of decision in this State in the same direction, but he said that if courts of justice were at liberty to make new laws instead of administering those which were already in existence, or if the case before him presented a new question, he could see no objection to the application of principles of equity to the case.   This theoretical rule and these precedents having no application to a case situated like the present, it would be most unreasonable to apply to it a doctrine not founded on equity, upon the idea of an analogy which does not really exist.   It is not true that an imperfect or incomplete performance of a duty imposed by a contract, or by the law, is, under all circumstances, a nullity.   If it were so, what would become of the principle of part payment, which is a defense *pro tanto* as well at law as in equity.   The distinction to which I refer may be illustrated by the case of the contract to deliver hay, just mentioned.   Let us suppose that payment for the whole quantity contracted for had been made in advance, and· that it was to be delivered in parcels, as was the fact in the case reported;   could the vendee, in a suit brought by him, recover for the whole quantity contracted for, when he had received and converted a part?   It would be against common reason and common sense to allow him to do so.   The same illustrations would apply to all the cases of this class.   One agrees, for instance, to serve another for a year, for a certain yearly sum, and works eleven months.   He cannot recover anything, because the entire performance was a condition precedent to the payment.   But suppose, upon some adequate consideration

already realized, the laborer should agree to serve for a year, and should leave without excuse, after having worked eleven months, could the party to whom the labor was due, recover as though no work had been done? Plainly he could not. I feel confident that the rule applicable to the non-performance of conditions has nothing to do with this case. Should it be said that the distinction which I propose to adopt would enable insurance companies, and other parties similarly circumstanced, to impose upon the other party a thing which they did not want, and had never contracted for, the answer, I think, would be, that a jury would always be enabled to adjust the damages according to the substantial justice of the case. If the performance was fraudulent or colorable, nothing ought to be allowed. If practically worthless or useless to the party for whom it was done, the same consequences would follow. But if, in an erection which would cost three thousand dollars, there was a fault or incompleteness which could be remedied by the expenditure of one hundred dollars, the jury would give the builder the benefit of what he had done, making the other party a liberal allowance for what remained to be done, or had been improperly done.

I have thus far omitted any reference to the fact that there were two policies on this property, and that both companies elected to rebuild. This does not, in my opinion, involve the necessity of bringing a joint action against both, though I do not say that such an action could not have been maintained for the purpose of adjusting the equities among the parties. The two companies had done everything towards rebuilding which they proposed to do, and both maintain that the burned building had been rebuilt. In electing to rebuild, each company had relied upon the other to contribute to the expense in proportion to the amount insured. The plaintiff had a right to have a completed building, and if this has not been entirely done, he is entitled to recover damages against either of the companies, sufficient merely to make a completed building. Should the company prosecuted claim that it had done its part, and that the delinquency was attributable to the other company, he could maintain an

action against that company in the nature of a suit for contribution.    But his undertaking to rebuild being absolute, I do not think he could defend himself against the assured by showing that the fault was that of the other company.

I am for reversing the judgment, and ordering a new trial, upon the principles stated.

Judgment reversed, and new trial ordered.