Louis Grossman, J.
Defendant insurance company issued an automobile insurance policy to the plaintiff which provided coverage for loss by theft or larceny. The decision herein hinges on the obligation of the insurance company to return plaintiff’s automobile after an election to make repairs was made by defendant insurance company.
Defendant rested at the end of plaintiff’s case and plaintiff’s uncontested evidence established that:
Plaintiff paid the premium for the policy for the period from June 11, 1968 to June 10, 1969; that on or about June 22, 1968 the automobile was stolen and plaintiff reported the theft promptly to the police and to the defendant company; that, while plaintiff arranged for the towing of the damaged automobile to Williams Brothers, hereinafter called the “repair shop,” the defendant subsequently ratified such action by approving the towing charges; that the defendant on July 5,1968 served notice upon the plaintiff that it was canceling its policy as of July 16, 1968, and it was not until the latter date that defendant took any steps to satisfy the loss; that on July 16, 1968 defendant’s employee, Pauloff, entered into an agreement with Williams Brothers for the latter to repair the damaged motor vehicle, and these arrangements between defendant and the repair shop were made over plaintiff’s protests, since he wanted to have the automobile repaired at Pape Chevrolet; that while the automobile was still at the repair shop and before the completion of the repairs, it was again stolen; that the defendant company thereafter paid the repair shop for the repairs to the automobile after the second theft had occurred.
Plaintiff contends that:
1. The defendant insurance company made an election to repair and restore the automobile on July 16, 1968 and thus created a new contract with the insured, which it breached when it failed to return a repaired automobile to the insured.
2. The defendant insurance company had no right to place plaintiff into a position of greater peril than he was in on June 22 and June 23,1968 by canceling its policy of insurance before it had satisfied its obligations under the terms of the policy.^
The defendant contends that it did not make any election to repair the automobile, and in any event, even if it had elected *3 to repair said automobile, it was liable only if its negligence caused the automobile’s loss, and that plaintiff failed to establish such negligence on the trial.
Upon due consideration of the testimony, the court finds that the defendant’s arrangement with the repair shop constituted an election by the defendant under option No. 2 of the policy.
The policy provides that the insurance company, after loss, has three options: (1) to pay for the loss in money; or (2) to repair or replace the damaged or stolen property; or (3) at any time before the loss is paid or the property is so replaced, at its expense, to return any stolen property to the named insured with payment for any resultant damage thereto.
Up to the time that defendant made the arrangements to repair the automobile, it had the option to pay plaintiff in cash the reasonable value of the damages to the automobile and to leave the stolen automobile with the plaintiff (option No. 3). Had it done so, the care of the automobile from that time on would have remained the plaintiff’s concern and obligation. Or, the defendant could have taken the automobile in its damaged condition and paid the insured the value of the automobile at the time of the loss (option No. 1). Defendant adopted neither of these options, but proceeded under option No. 2 to repair the stolen property or replace the same.
Having adopted option No. 2, the court finds that this election created a new agreement with the plaintiff under the terms of which defendant agreed to return a repaired car to the plaintiff. Up to that time defendant had the absolute right to take advantage of any one of the options open to it under the terms of the policy, but having adopted the alternative that it did, it assumed all the risks inherent in its fulfillment.
In determining the meaning of the provisions of a new contract created by defendant’s election, this court is guided, by the reasonable expectations and purpose of the ordinary businessman when making a new contract. (Bolling v. Northern Ins. Co. of New York, 253 App. Div. 693, affd. 280 N. Y. 510.)
It is reasonable to assume that if the defendant company elects to repair, instead of making a cash payment to the plaintiff for the value of the automobile or the value of the repairs, that it also undertakes to return the property so repaired. Certainly repairs are not made in a vacuum nor are parts replaced on a phantom instrumentality; so that the plaintiff had every reason to assume that the automobile would be returned upon the completion of the repairs and that his right of recovery would not depend on his ability to prove negligence of a party chosen by the defendant and with whom he had no *4 privity. Indeed, the law is clear that where the defendant elects to make repairs instead of paying the insured, the latter does not have the right to question this decision but must acquiesce in defendant’s choice. (Wynkoop v. Niagara Fire Ins. Co., 91 N. Y. 478.)
Although the courts of this State have not passed upon the obligation of an insurance company to return the property which it has elected to repair under the exact circumstances as the case at bar, an appellate court of California has specified that the obligation to repair included an obligation to effect the repairs within a reasonable time and to deliver the repaired automobile to the insured (Owens v. Pyeatt, 248 Cal. App. 2d 840) where, at page 850 appears the following pertinent language: “ Allstate’s obligation to repair the automobile, assuming such to be repairable and Allstate’s option to repair, included an obligation to effect the repair within a reasonable time and thereupon to deliver the repaired automobile to the insured upon payment by the latter of the $100 deductible portion of the cost of repair.”
The extent of the obligation when the defendant insurance company elects to repair is analogous to such obligation when such election is made under the terms of the New" York Standard Fire Policy. This has been analyzed and discussed cogently in Richards, Insurance (5th ed. by Warren Friedman, § 554, p. 1863) as follows: “Once the insurer has elected to exercise the option to repair, rebuild or replace, it must actually do so and cannot afterward repudiate the election; [p. 1865] * * * From the time of such election the contract between the parties becomes a new and independent undertaking on the part of the insurer to build or repair the subject insured, and to restore it to its former condition, [p. 1866] * * * If without fault of the insured, the company either neglects to complete the work or is prevented from doing so by the interference of the public authorities, the loss will fall upon the insurer, [p. 1867] So also, if during the rebuilding or repairing, the property is again burned; for here, too, through no fault of the insured, the insurer has failed to fulfill its contract.”
Also, New York Jurisprudence, in its chapter on Insurance (vol. 31, § 1604) in considering the nature of the obligation assumed by the insurance company when it elects to rebuild or repair under the terms of an insurance policy, also concludes that this election creates a new contract which can only be discharged by its performance or execution.
Those New York cases which have considered the nature of defendant company’s obligation when it has made an election
*5 to repair under the New York Standard. Fire Policy, have also concluded that the execution of the new agreement may cost the defendant company more than its obligation under the original policy of insurance, because of the intervention of catastrophies. Thus, as stated by Marvin, J., in Morrell v. Irving Fire Ins. Co. (33 N. Y. 429, 430c-430e) :■
1 ‘ It seems to me that when the insurer elects to rebuild, and gives notice of such election, the contract at once is, that the insurer will rebuild absolutely, in consideration of the premises, * *' * The action will be upon the contract to rebuild, and the amount of the damages to be determined, as in other actions for the breach of building contracts, and such amount may exceed $3,000 [the face amount of the policy] * * * the position that the contract for indemnity in money remained in force until the house was actually rebuilt, must fail.”
The language of Chief Judge Dentó in the concurring opinion (pp. 430k-4301) likewise underlines the obligation of the insurance company which elects to repair to be one to procure “ as good an edifice * * * as the one which had been destroyed ; but if they will, by availing themselves of the option, undertake to rebuild, they are bound to do so, at any expense which may be necessary, though it should exceed the amount insured.” Since the obligation of the insurance company is then measured by the new contract, the canceling of a contract of insurance is of no significance until the insurance company has fully performed the contract created by its election. Accordingly, the court holds that the defendant has not performed fully until it has returned a repaired automobile to the plaintiff, and its notice of cancellation is immaterial to the issues of this case.
Additionally, this court holds that, in any event, the defendant company could not utilize its right of cancellation to place plaintiff into a position of greater peril than he was in on the date of the loss. If the defendant company did not wish to expose itself any longer to this risk, it should have met its obligation to the plaintiff by paying him forthwith either the value of the damages and permitting him to repair the automobile himself, or it should have paid him the value of the automobile at the time of the theft and itself have taken the salvage. Had it done so at that time, the notice of cancellation would have been effective if the car was thereafter again stolen. But, since defendant elected to repair the car itself it could not lessen its obligation to plaintiff by delaying repairs until the cancellation became operative.
Since the court holds that the defendant’s obligation to plaintiff arises out of the new agreement created by defendant’s *6 election to make repairs, the cases cited by defendant in support of an ordinary bailor-bailee relationship are not applicable. This case does riot involve an ordinary common-law bailorbailee relationship, but a relationship arising from an agreement between the insurer, who has been paid and has received a consideration to insure certain results, and the plaintiff.
Plaintiff’s evidence of the reasonable value of the automobile at the time of the loss is adopted by the court.
Judgment for the plaintiff in the sum of $1,100.