PHILIP STONE, Administrator of THOMAS E. PERRY
*vs.* THE MUTUAL FIRE INSURANCE COMPANY OF
MONTGOMERY COUNTY, Garnishee of HARVEY C.
FAWSETT.

*Insurance against Fire— Construction of Policy— Option to
Rebuild or Replace property Destroyed — Attachment—
Property not Subject to Garnishment—Mortgage—Adver-
tisement of Mortgaged property for Sale.*

On the 1st of August, 1868, F. was insured against loss by fire by
a policy issued by the M. F. Ins. Co. The policy contained a
clause providing for payment of the loss which might happen by
reason of fire to the property insured "unless the said company
shall, within ninety days after proof of such damage or loss,
proceed to repair, rebuild, or replace the same in as good order,
condition, and quality as it was before it was so injured by fire."
On the 14th of April, 1890, one of the buildings covered by the
policy of insurance, was totally destroyed by fire. The proof
of loss was returned on the 29th of the same month, and on the
15th of May following, by a resolution of its board of directors,
the insurance company determined to adjust the claim of F. by
rebuilding in accordance with the provisions of the policy, and
in pursuance of this resolution a valid contract was made with
a builder to erect the new building on the site of the old one.
Subsequent to the passage of this resolution S. had an attach-
ment issued on a judgment recovered against F. long subsequent
to the date of the policy, and directed it to be laid in the hands
of the insurance company to affect the insurance money claimed
by S. to be due to F. by reason of the burning of his house.
HELD :

1st. That under the rebuilding clause contained in the policy of
insurance, there never was a debt due by the insurance company
to F., nor any sum of money in its hands which could be reached
by his creditors by means of an attachment or otherwise, and
consequently the attachment issued by S. must fail.

2nd. That the case was not affected by the fact that at the time
when the insurance company determined to rebuild, the property

had been advertised for sale under proceedings for the foreclosure of a mortgage made by F. subsequent to the making of the policy of insurance, as it did not follow that the land would be sold or cease to be owned by F. because it was so advertised; and if the company had waited until the mortgage sale had been finally ratified, before exercising its election to rebuild, it might then have been too late to avail itself of that valuable right under the policy.

APPEAL from the Circuit Court for Montgomery County.

The case is stated in the opinion of the Court. The cause was tried before the Court without the intervention of a jury.

*First, Second* and *Third Exceptions* not passed upon by the Court.

*Fourth Exception.*—At the trial the plaintiff offered the two following prayers :

1. The plaintiff prays the Court to declare as matter of law, that if they find from the evidence in this cause, that the garnishee had issued to Harvey C. Fawsett, the policy of insurance offered in evidence, insuring his dwelling house for the sum of $2,100; that on the 14th day of April, 1890, said dwelling house was entirely destroyed by fire; that the said Fawsett duly presented his proofs of loss; that on the 15th day of May, 1890, the Board of Directors of the Mutual Fire Insurance Company of Montgomery County, resolved to rebuild and reinstate said dwelling house; that on the 8th day of July, 1890, the farm on which said dwelling house had stood was sold by auction to Mrs. Marian E. Fawsett under a mortgage from said Harvey C. Fawsett and wife to Elizabeth H. Riggs, which said sale was ratified and confirmed by the Court on the 11th day of September, 1890; that said dwelling house was rebuilt or reinstated by said company at a cost of $1,600, and that the erection of said building was not begun until after said 8th day

of July, 1890, then the plaintiff is entitled to recover in this case.

2. The plaintiff prays the Court to declare, as matter of law, that under the provisions of the policy of insurance offered in evidence in this case, the garnishee had no right to rebuild or reinstate the building on the farm of Mrs. Marian E. Fawsett, if they find that the erection of said building was begun after the 8th day of July, 1890.

The garnishee offered the three following prayers:

1. The garnishee prays the Court to rule, as matter of law, that from the undisputed testimony in this case there never were any assets of the said Harvey C. Fawsett in the hands of the garnishee liable to attachment and garnishment under the writs of attachment in this case, and the plaintiff cannot recover in this action against the garnishee.

2. The garnishee prays the Court to rule, as matter of law, from the undisputed testimony in the case, that the said garnishee, in exercise of the option or discretion reserved to it by the terms and condition of the policy of insurance offered in evidence, did, by resolution, elect to rebuild and replace the dwelling house of Harvey C. Fawsett, destroyed by fire, and did, in pursuance of such election, rebuild and replace said house in as good or better condition than it was before said fire; there are no assets of the said Harvey C. Fawsett in the hands of said garnishee liable to attachment or garnishment, and the plaintiff cannot recover against the garnishee in this action.

3. The garnishee prays the Court to rule, as matter of law, from the undisputed testimony in the case, that the said garnishee, in the exercise of the option or discretion reserved to it by the terms and conditions of the policy of insurance offered in evidence, did, by resolution, elect to rebuild and replace the dwelling house of the said Harvey C. Fawsett destroyed by fire, and did, in pursuance

of such election, contract for the rebuilding of said house, before the mortgage sale of the property on which it stood, and that in pursuance of such election and contract, said house was rebuilt in as good or better condition than it was before said fire; there are no assets in the hands of the garnishee of the said Harvey C. Fawsett liable to attachment or garnishment, and the plaintiff cannot recover in this action.

The Court (VINSON and LYNCH, J.) rejected the prayers of the plaintiff and granted those of the garnishee. The plaintiff excepted, and the finding and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*James B. Henderson,* and *Philip D. Laird,* (with whom were *H. W. Talbott,* and *George Peter,* on the brief,) for the appellant.

The sum due Fawsett under the terms of the policy of insurance was attachable, (Art. 9, sec. 10, of the Code) and the fact that the company had the option to reinstate the assured by rebuilding the house, cannot deprive the appellant of his remedy by attachment. A debt which may be paid in money or in some other way, upon the election of the obligor, is the subject of attachment, as well as any other kind of debt. *Louderman, Garnishee of Harrison vs. Wilson,* 2 *H. & J.,* 379.

The authorities are uniform to the effect, that immediately upon the happening of the loss, the loss of the assured, to the extent of the amount insured, becomes a debt against the company, which it is bound to discharge as other debts are discharged. 1 *Wood on Fire Insurance, secs.* 138, 139, *and authorities cited;* 2 *Wood on Fire Insurance,* 758; *Carter vs. The Humboldt Fire Ins. Co.,* 12 *Iowa,* 287; *West Branch Ins. Co. vs. Helfenstein,* 40 *Penna. St.,* 289.

Being a debt, and nothing more than a debt, the amount ascertained to be due from the company to Fawsett, as the cost of reconstructing the house, was primarily, under the laws of the State, clearly liable to attachment.

The fact that the contract of insurance contained a clause authorizing the company to elect to rebuild the property, and in this manner to reinstate the assured, does not deprive the appellant of his remedy by attachment, under the peculiar circumstances of this case. Policies of insurance are special agreements with the persons insured against such loss or damage as they may sustain. They are not insurances of specific things, do not attach on the realty, or in any manner go with it as incident thereto. 2 *Wood on Fire Ins.*, 758 ; *Lynch vs. Dalzel*, 3 *Brown's Parl. Cases*, 497.

While "it is well settled that the plaintiff in attachment, as against the garnishee, is subrogated to the rights of the debtor, and can recover only by the same right, and to the same extent as the debtor might recover if he were suing the garnishee," (*Myer, et al. vs. Liverpool, London and Globe Ins. Co.*, &c., 40 *Md.*, 600,) in this case the debtor, Fawsett, could have maintained his action against the company if he had chosen to do so. His title to the property failed after the loss had accrued, and after the company's liability to him had become a mere debt. The alienation of the property by the mortgage did not vitiate the policy of insurance or relieve the company of its liability. Its alienation by the sale under the foreclosure proceedings, if they had been instituted and concluded before the fire, would clearly have done so ; but at the time of advertisement and sale the loss had been sustained, and the indebtedness adjusted and admitted by the garnishee. It owed Fawsett, by its own admission, seventeen hundred dollars. *Myer, et al. vs. Liverpool, London and Globe Ins. Co.*, &c., 40 *Md.*, 600; *Odend'hal, Garnishee, vs. Devlin*, 48 *Md.*, 445.

The purchaser under the mortgage sale purchased under the terms of the advertisement. The mortgagee had no claim to the policy of insurance, and the sale having taken place subsequently to the fire and ascertainment of the loss and damage, the improvements upon the land, as described in the advertisement, are only such as existed at the time of the sale. This is all that the purchaser acquired, all she had in view at the time she bid for the property ; and it follows, that the restoration of the house under the circumstances, amounted simply to a gratuity of $1,600 to the purchaser, and to the prejudice of Fawsett's creditors, because it is a fair inference that if the building had been intact, the property would have brought a higher price, and the excess, after paying the first mortgage, would have gone to the creditors. The fact that Fawsett's wife became the purchaser and was a junior lien creditor, and that therefore Fawsett incidentally obtained the benefit of the reconstruction of the building, makes no difference. For the purposes of this case, she was as much a stranger as any one else could have been. The test of the appellant's right to the attachment, if we understand the ruling of the Court in *Myer's Case,* 40 *Md.,* 600, is, whether Fawsett could have maintained an action against the company, no matter who became the purchaser. *Odend'hal vs. Devlin,* 48 *Md.,* 445.

The contention of the appellant does not change the terms of the contract of insurance. When the loss accrued, the contract of insurance was at an end. The cost of reconstruction of the house was, under the circumstances of the case, the limit of the company's liability. After ascertainment of that cost, it was, practically, a matter of indifference to the company whether it paid the money to a contractor, to Fawsett or to Fawsett's creditors. Whatever rights Fawsett had to the money, were clearly subject to the lien of the attachment, and the

company proceeded to act with full knowledge of this. It is not entitled to any consideration, if it took its own way of doing things after the process of the Court had been served upon it, and Fawsett's money in its possession had been placed in the hands of the law.

*John W. Warner,* and *Thomas Anderson,* (with whom was *Charles Abert,* on the brief,) for the appellee.

The condition in the policy to compensate the assured the value of the property at the time the loss occurred, or to reinstate him by rebuilding the property in as good condition as it was at the time of the loss, was the contract between the parties—insurer and insured—at the time the policy was issued, and there is nothing immoral or inequitable in it ; and although no case can be found running all fours with this, such a condition is abundantly sustained by authority. *Stamps vs. Commercial Fire Ins. Co.,* 77 *N. C.,* 209 ; *Carpenter vs. The Providence Washington Ins. Co.,* 16 *Peters,* 495 ; *Morrell vs. Irving Fire Ins. Co.,* 33 *N. Y.,* 429.

What has conferred upon the attaching creditor the right to have agreement modified for his benefit and to circumscribe and limit the right of the company under it ?　Not surely the recovery of the judgment or the laying of the attachment in its hands; nor yet the execution of the mortgage and the sale under it. *Troxall, et al. vs. Applegarth, Garnishee, &c.,* 24 *Md.,* 163; *and Myer, et al. vs. Liverpool, London and Globe Ins. Co.,* 40 *Md.,* 595. For if by virtue of his judgment, then he has under a constructive, equitable assignment rights he could not assert under an actual legal assignment. *Heilmann vs. The Westchester Fire Ins. Co.,* 75 *N. Y.,* 7; *Tolman vs. The Manufacturers' Ins. Co.,* 1 *Cushing,* 73.

The mortgage was executed long after the issuance of the policy, and the company was not a party to it, and

* Present, but did not take part in the argument.

although the sale was a judicial one, and *in invitum*, the execution of the mortgage was a voluntary act and rendered the judicial sale possible.

Long before the judicial sale, to wit, on the 15th of May, 1890, the obligation of the company, by its resolution of that date, to rebuild within ninety days, had become absolute; the alternative right to make pecuniary compensation had been eliminated from the contract. For failure to begin the work of rebuilding under this contract, with now but one condition, within ninety days from the date of the resolution of adjustment, Mr. Fawsett would have had a legal ground of action. In addition to this obligation to Mr. Fawsett after the resolution of adjustment, the company had incurred before the sale an additional obligation to the Washington builder by their contract with him to rebuild. The plaintiff contended in the Court below, that although the obligation to rebuild was consequent upon the resolution of adjustment, yet the advertisement of the property under the mortgage in the newspapers absolved the company not only from that obligation, but also from its obligation to carry out the contract with the Washington builder.

Suppose that to an action by Fawsett on the contract for failure to begin to rebuild within ninety days after the resolution of adjustment, the company had confessed the obligation, and pleaded in avoidance that some of its agents had seen an advertisement for a sale of the property under the mortgage, what would have been the ruling of any Court on demurrer to that plea? *Heilmann vs. Westchester Fire Ins. Co.*, 75 *N. Y.*, 7; *Morrell vs. Irving Fire Ins. Co.*, 33 *N. Y.*, 429; *Home Mutual Fire Ins. Co. vs. Garfield*, 60 *Illinois*, 124. It did not necessarily follow that the property would be sold because it was advertised, and if sold after the building was begun, it might have brought a better price. The plaintiff con-

tends that after the property was sold the company had no right to continue to build on Mrs. Fawsett's property; that it was a mere donation of Fawsett's money to her, at the expense of his creditors. We cannot see this. If Fawsett did anything, or anything was done by judicial process growing out of what was done by him, rendering it legally impossible for the company to carry out either alternative of the contract contained in the policy, then it was absolved from obligation to do anything. The purchaser being willing, and the assured having marital rights in the property, it was not legally impossible to rebuild. The option or discretion in the condition of the policy was a valuable right to the company. It could not have settled with the assured for less than twenty-one hundred dollars, it replaced the destroyed property for sixteen hundred dollars: The contention of the plaintiff seems to be that third parties intervening long subsequently to the execution of a contract, can change its terms, enlarge the liabilities and restrict the rights of one of the parties to it without its consent. This is a power prohibited by constitutional provision, not only to Courts, but to legislative bodies as well.

FOWLER, J., delivered the opinion of the Court.

On the first of August, 1868, Harvey C. Fawsett was insured against loss by fire by a policy issued by the Mutual Fire Insurance Company of Montgomery County.

The policy contained a clause providing that all the property and securities of said company should be forever subject and liable to pay said Fawsett, his heirs and assigns, the loss which might happen by reason of fire to the property insured, " unless the said company shall, within ninety days after proof of such damage or loss, proceed to repair, rebuild, or replace the same in as good order, condition, and quality, as it was before it was so injured by fire." The policy further provided that when-

ever the said company had paid the amount mentioned therein, or had rebuilt or replaced any buildings destroyed by fire as therein provided, said policy should be "utterly null and void, and of none effect, either in law or equity."

About fifteen years after the date of this policy Mr. Fawsett, together with his wife, mortgaged his farm and the insured buildings thereon, to Mrs. E. H. Riggs to secure the payment of a considerable sum of money, in which mortgage there was contained the usual power of sale in case of default; and some years after the execution of said mortgage the appellant recovered his judgment against Fawsett in the Circuit Court for Montgomery County.

On the fourteenth of April, 1890, the dwelling house, one of the buildings covered by the policy of insurance, was totally destroyed by fire ; and the Insurance Company, the appellee here, on the fifteenth of May following, by a resolution of its Board of Directors, determined to adjust the claim of Fawsett by rebuilding in accordance with the provisions of the policy before referred to.

Subsequent to the passage of this resolution, the appellant had an attachment issued on his judgment, and directed it to be laid in the hands of the appellee to affect the insurance money claimed by the appellant to be due to Fawsett by reason of the burning of his dwelling house.

It appears, therefore, that the policy of insurance on which the appellee company bases its contentions long antedated both the mortgage under which the land was sold, and the judgment on which the appellant issued his attachment. It also appears that the proof of loss was returned on the twenty-ninth of April, 1890, and that within ninety days, the time limited by the policy, the appellee had determined to rebuild, and finally, that in pursuance of this resolution, a valid contract had

been made by the appellee with a builder to erect the new building on the site of the old one.

The statement of the foregoing facts, it seems to us, is sufficient to show that the appellant, claiming here under his attachment, has no standing, for it is apparent that, under the rebuilding clause contained in the insurance policy, there never was a *debt* due by the appellee to Fawsett, nor any sum of money in its hands which he could legally claim, or which could be reached by his creditors by means of an attachment or otherwise.

The Insurance Company having duly exercised its election to rebuild, it is clear neither Fawsett nor his creditors can, under the terms of the policy, claim the insurance money.

It would certainly be a great hardship and an apparent injustice, to subject the Insurance Company, being guilty of no fraud, to a suit on the part of the insured to recover on the policy, on the theory that the rebuilding clause is void, and at the same time render it liable to an action by the builder to recover damages for breach of the building contract, which it must be admitted it had the right to make under the circumstances of this case.

For it is not contended that the title to the land on which the new building was to be erected had ceased to be in Fawsett when the Insurance Company made the contract with the builder, but it is said the property was then advertised under the mortgage already mentioned. But it does not follow that the land would be sold, or cease to be owned by Fawsett because it was advertised. And if the appellee had waited until the mortgage sale had been finally ratified, before exercising its election to rebuild, it might have then been too late to avail itself of that valuable right under the policy.

There being nothing in the hands of the Insurance Company which Fawsett could legally claim, it follows,

of course, that the attachment must fail.   *Myer, et al.
vs. Liverpool, London and Globe Insurance Company, &c.,*
40 *Md.,* 600.

Cases may, no doubt, arise in which the insured, either
from peculiar circumstances or fraud in the exercise of
the right to rebuild, should have some remedy.

And this is well illustrated by the case of *Anderson vs.
The Commercial Union Assurance Co.,* 55 *L. J.,* 146, so
much relied on by the appellant both in his brief and
oral argument.   But, so far from being an authority
sustaining the contention of the appellant it is directly
to the contrary.   In the case just mentioned, the policy
contained a clause similar to the one in question, giving
the insurers the discretion to repair and replace the
machinery insured.   The building in which the machin-
ery was located and used, when insured, as well as the
machinery itself, was damaged by fire; and the former
ceased to be occupied, or in the possession of the assured,
because he failed to pay the stipulated rent.   Against
the protest of the insured the insurer persisted in rein-
stating and repairing the machinery in the said building.

An action on the policy was brought, under these
circumstances, by the insured to recover *the amount of
loss* by fire; and it was held that both parties were
wrong—the defendant, that is the Insurance Company,
because, although it had not lost its right to reinstate
the machinery, it should not have been reinstated in the
same *place,* but in the same *state,* in which it was before
the fire; and the plaintiff, that is, the insured, was wrong
because he did not remove the machinery to some reason-
able place, to be reinstated and repaired by the insurer.

But all the Judges held that, whatever rights the in-
sured might have, he could not recover, in his action on
the policy, the amount of the loss.   And we think there
is as little reason as there is authority to sustain the
contention of the appellant in this case, namely, that he

---

is entitled to recover the amount which it had been ascertained the new building would cost.

Where there is a failure to rebuild after an election so to do, it has been held that the proper remedy of the assured is, not an action *ex contractu* on the policy for the amount of loss by fire, but an action to recover damages for not rebuilding, and that the amount of the insurance mentioned in the policy ceases to be the measure of damages. *Brown vs. Royal Insurance Co.*, 1 *Ellis & Ellis*, 853; *Morrell vs. Irving Insurance Co.*, 33 *N. Y.*, 429.

It will be unnecessary to pass upon the various exceptions taken to the rulings of the Court below on the admissibility of testimony, for they are all involved in the action of the Court upon the prayers; and it follows from what we have said, that the appellant's prayers were properly rejected, and those of the appellee were properly granted.

*Judgment affirmed.*

